**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-0110-WJM-NRN

DRORIT SILVERMAN, a/k/a Drorit DeAngelo, individual,

     Plaintiff,

v.

DALLAS D. GREENFIELD,
HOUTCHENS, GREENFIELD & SEDLIK, LLC, a Colorado limited liability company,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 702
AND SUMMARY JUDGMENT MOTIONS**

---

     This is a legal malpractice action arising from a high-dollar divorce. Plaintiff Drorit Silverman, a/k/a Drorit DeAngelo, was the wife in the now-dissolved marriage. The Court will refer to her as "DeAngelo," to avoid confusion with her ex-husband, Paul Silverman ("Silverman").

     DeAngelo sues Dallas D. Greenfield, her divorce attorney, and his law firm at the time of the divorce proceedings, Houtchens, Greenfield & Sedlik, LLC. The parties generally refer to Greenfield himself as the target of DeAngelo's accusations, so the Court, for simplicity, will refer to Defendants collectively as "Greenfield."

     This Court has jurisdiction over the dispute because DeAngelo is a Nevada resident, Greenfield is a Colorado resident, and DeAngelo claims that, but for Greenfield's alleged malpractice, she would have received many hundreds of thousands of dollars more from her ex-husband. *See* 28 U.S.C. § 1332(a).

Currently before the Court are Greenfield's Motion to Strike Unsupported Opinions of Scott Saltzman ("Rule 702 Motion") (ECF No. 71) and Greenfield's Motion for Summary Judgment (ECF No. 72). For the reasons explained in detail below, the Court grants in part and denies in part both motions. The upshot is that the case will proceed to trial solely on DeAngelo's theories that Greenfield violated the standard of care when he (a) did not argue for a more favorable distribution of marital property, and (b) failed to propose terms for a promissory note to effectuate the marital property equalization payment.

The analysis below first sets forth the factual background because it is helpful to understanding all issues argued below. The Court then turns to Greenfield's Rule 702 arguments, and finally to his summary judgment arguments.

## I. FACTS

The following facts are undisputed unless attributed to a party or otherwise noted.

### A. Divorce Proceedings Before Entry of Permanent Orders

1. Commencement of Divorce Proceedings

In March 2012, DeAngelo hired Greenfield to represent her in proceedings to dissolve her marriage to Silverman, which had lasted ten years. (ECF No. 81 at 8, ¶¶ 1–2.)[1] At the time, Silverman had close to $4.9 million in personal, nonmarital assets and earned approximately $42,000 per month in passive income. (*Id.* at 9, ¶ 5.) DeAngelo had $25.00 in personal, nonmarital assets. (*Id.*) Their marital assets were mostly unliquidated partnership interests, worth about $2.5 million. (*Id.*)

---

[1] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination.

Divorce proceedings took place in Weld County District Court. (ECF No. 72 at 5, ¶ 3 n.1.) "In Weld County District Court at that time, consent to having a magistrate preside over a domestic relations case was presumed absent objection." (*Id.*) Greenfield never advised DeAngelo that she had the option to object. (ECF No. 81 at 9, ¶ 7.) Greenfield (on DeAngelo's behalf) did not object, and neither did Silverman. (*Id.*)

During divorce proceedings, Greenfield understood that Silverman faced serious health issues and was hospitalized periodically, although the parties dispute the extent of Greenfield's knowledge about Silverman's medical conditions. (*Id.* ¶ 6; ECF No. 85 at 6 ¶ 6.) In August 2012, however, DeAngelo e-mailed Greenfield about various topics, and mentioned that Silverman was "getting a home dialysis machine." (ECF No. 81-5.) She continued, "Does that mean he is going to live a long time? I don't think so. SO I still want this to be a loooong divorce. He is sick every time we think about getting [the] kids over to his house. So it[']s difficult for me to gauge where he is at." (*Id.* (emphasis in original).) By preferring a "loooong divorce," DeAngelo meant that she hoped Silverman would die before the magistrate could finalize the divorce, thus mooting the proceeding and allowing her to inherit Silverman's assets. (ECF No. 81 at 10, ¶ 10.)

2.   Contempt Citation

On November 5, 2012, Greenfield moved to hold Silverman in contempt for having recently withdrawn, without consent, about $82,000 from a bank account he held jointly with DeAngelo, allegedly in violation of the preliminary injunction that automatically takes effect when a divorce petition is filed (*see* Colo. Rev. Stat. § 14-10-107(4)(b)(I)(A)). (ECF No. 72 at 5, ¶ 4.)[2] On November 14, 2012, the magistrate

---

[2] The cited portion of the record says $81,000, but later arguments make clear that $82,000 was a more accurate figure.

issued a show-cause citation to Silverman.  (*Id.* at 6, ¶ 5.)  The citation had no return date.  (ECF No. 72-3.)

       3.     <u>Preparations for Permanent Orders Hearing, and Postponement of Contempt</u>

At some point, not clear in the record, the magistrate scheduled a "permanent orders hearing" for February 11 and 13, 2013.  (ECF No. 85-1 at 1.)  On January 18, 2013, in the run-up to the permanent orders hearing, the parties filed a joint trial management certificate.  (*Id.*)  In the "Pretrial Motions" section of that certificate, Greenfield listed the contempt motion as a "matter[] or motion[] [that] should be addressed before [the] hearing commences."  (*Id.* at 2.)

For reasons not clear on the record, the permanent orders hearing never took place in February 2013.  On February 14, 2013—the day after the hearing would have concluded—the magistrate entered a decree of dissolution of marriage, "leaving various issues, including division of marital assets and debt, maintenance, child support, attorney's fees, and the contempt citation" for a later trial to the court.  (ECF No. 72 at 6, ¶ 6; ECF No. 15 ¶ 15.)

The permanent orders hearing eventually was rescheduled for January 21–22, 2014.  (ECF No. 72-4 at 1–2.)  On December 6, 2013, in the run-up to the continued hearing, the parties again filed a joint trial management certificate.  (*Id.*)  The "Pretrial Motions" section of that certificate again lists the contempt motion as a "matter[] or motion[] [that] should be addressed before [the] hearing commences."  (*Id.* at 2.)

At some point before the continued hearing, and no later than January 17, 2014, Greenfield explained to DeAngelo the difference between the two types of spousal maintenance (colloquially known as alimony): contractual and statutory.  (ECF No. 72

4

at 6, ¶ 8.)  In particular, Greenfield explained to DeAngelo that contractual maintenance would survive Silverman's death, but statutory maintenance (*i.e.*, the form of maintenance a court could order) would not.  (*Id.* ¶ 9.)

### 4. The Permanent Orders Hearing

The continued permanent orders hearing took place as scheduled on January 21 and 22, 2014, before Weld County Magistrate Andrea Koppenhofer.  (*See, e.g.*, ECF No. 81-6.)  The parties apparently agree that Magistrate Koppenhofer did *not* hear evidence regarding the contempt citation, but, for reasons this Court cannot fathom, neither side explains why.  The Court has reviewed the report of attorney Kathleen Hogan, whom DeAngelo has designated as her expert on the standard of care in divorce proceedings.  (ECF No. 72-36.)  Hogan's account of the permanent orders hearing suggests that Magistrate Koppenhofer had forgotten about, or was unaware of, a minute order (not in the record) specifically designating the permanent orders hearing as the forum to hear evidence on the contempt citation.  (*Id.* at 10–11.)[3]  Hogan also faults Greenfield for not bringing that minute order to Magistrate Koppenhofer's attention.  (*Id.* at 11.)  Hogan faults Greenfield for misunderstanding the nature of the contempt he was seeking, which in some way prompted Magistrate Koppenhofer to direct the parties to address contempt at a later hearing.  (*Id.* at 10–11.)

Magistrate Koppenhofer issued no orders at the end of the permanent orders hearing.  (*See* ECF No. 81-6 at 3.)  She instead called for written closing arguments, which she expected to include a proposal for a promissory note that would effectuate whatever division of marital property she would ultimately order.  (*Id.*)

---

[3] Magistrate Koppenhofer may not have been on the case from the beginning.  A different magistrate issued the contempt citation in November 2012.  (ECF No. 72-3.)

Greenfield submitted his written closing argument on January 31, 2014. (ECF No. 72-7.) That document did not propose terms for a promissory note, nor did Greenfield at any other time provide Magistrate Koppenhofer with proposed terms for a promissory note. (ECF No. 81 at 13, ¶ 21.) Greenfield did raise the contempt issue, however, stating that DeAngelo would withdraw the contempt motion if the permanent orders included a requirement that Silverman pay DeAngelo $41,000 "to represent one-half of [the joint bank] account." (ECF No. 72-7 at 4; *see also id.* at 2 (same).)

Greenfield further argued for two alternatives as to an equitable distribution of the marital property. The first alternative was an equalization payment from Silverman to DeAngelo of $1,183,114. (*Id.* at 2.) This would have equalized the parties' assets but not their substantial tax debts, calculated by DeAngelo at $450,307 and by Silverman at $484,375. (*See* ECF No. 72-8 at 3–4.) Greenfield thus proposed a second alternative in the event that Magistrate Koppenhofer decided to distribute the tax debts evenly. In that case, Greenfield said, a payment from Silverman to DeAngelo of $958,010.50 would "equalize the net assets of the parties." (ECF No. 72-7 at 2.)

B.    **The Magistrate's Permanent Orders**

Magistrate Koppenhofer issued her permanent orders on February 28, 2014. (ECF No. 72-8.) In terms of dividing the marital estate, she adopted Greenfield's first alternative, allocating all tax debt to Silverman and ordering him to make an equalization payment to DeAngelo of $1,183,114. (*Id.* at 3–4.) She also awarded the equity in a Nevada residence to DeAngelo, which the parties represent to be $12,000. (*Id.* at 2.)[4]

_____

[4] The cited portion of the record states that the equity totaled $24,561. However, Greenfield repeatedly asserts that the figure was $12,000 (ECF No. 71 at 6; ECF No. 72 at 17), and DeAngelo never disputes this assertion. Accordingly, although the Court does not understand where the $12,000 figure comes from, it will accept it for present purposes as the

Regarding the $1,183,114 equalization payment, Magistrate Koppenhofer ordered Silverman "to execute a promissory note to [DeAngelo] in that amount, with payments to be made monthly in the amount of $3,000.  Interest shall be annual at 8%.  [DeAngelo] is permitted to collateralize the outstanding debt if she so chooses."  (*Id.* at 4.)  Concerning spousal maintenance, she ordered Silverman to pay DeAngelo "$10,000 per month for 5.5 years or 65 months."  (*Id.* at 6.)  And, "to secure the maintenance and the distribution of property payment," Magistrate Koppenhofer ordered Silverman to maintain a $100,000 life insurance policy with DeAngelo as sole beneficiary.  (*Id.* at 7.)  As for a request from Greenfield that Silverman be required to pay DeAngelo's attorneys' fees, she ordered further briefing.  (*Id.* at 8.)

Finally, Magistrate Koppenhofer concluded with a warning about availability of an appeal: "This order was entered by a magistrate in a hearing to which consent was necessary; the parties consented when they scheduled the hearing in the magistrate's division.  Any appeal of this ruling must be taken to the Colorado Court of Appeals pursuant to C.R.M. 7(b)."  (*Id.*)  The cited rule—from the Colorado Rules for Magistrates—says that, in consent-required cases, the magistrate's judgment is treated as if from a district judge and "shall be appealed pursuant to the Colorado Rules of Appellate Procedure in the same manner as an order or judgment of a district court."  In other words, the aggrieved party may not request a district judge to review the magistrate's order.

---

undisputed amount of equity in the Nevada home, all of which Magistrate Koppenhofer awarded to DeAngelo.

**C.    Divorce Proceedings, and Related Proceedings, After Entry of Permanent Orders**

        1.      <u>Errors Discovered & Appeals Discussed</u>

"Shortly afterwards," DeAngelo met with Greenfield to discuss the problem inherent in the requirement that Silverman pay $1,183,114 to DeAngelo in monthly installments of $3,000 at 8% annual interest.  (ECF No. 72 at 8, ¶ 12.)  Specifically, at 8% interest, $3,000 per month ($36,000/year) would not cover the accruing interest ($94,659.12/year), much less the required principal payments.  (*Id.*)

Whether in this same conversation or sometime later, DeAngelo raised with Greenfield the possibility of an appeal, and Greenfield said that she would need to retain different counsel.  (*Id.* at 9, ¶ 14.)  According to DeAngelo, Greenfield specifically advised that her only option was an appeal to the Colorado Court of Appeals in Denver and that she would therefore need to hire a Denver lawyer.  (*Id.*)  DeAngelo believed she could not afford that course of action.  (*Id.* ¶ 15; ECF No. 81 at 5, ¶ 15; ECF No. 85 at 4, ¶ 15.)

DeAngelo claims that Greenfield was wrong to advise that an appeal to the Colorado Court of Appeals was DeAngelo's only option.  She points to Colorado Rule for Magistrates 5(a), which states, in relevant part, "Except for correction of clerical errors pursuant to [Colorado Rule of Civil Procedure] 60(a), a magistrate has no authority to consider a petition for rehearing."  (*See* ECF No. 81 at 15, ¶¶ 27, 29.)  The cross-referenced Rule 60(a) reads, in relevant part, "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."  Accordingly, DeAngelo claims

that Greenfield could have moved Magistrate Koppenhofer to reconsider her permanent

orders under the theory that they contained

> clerical errors, including omissions of the date or means by
> which Plaintiff ever would or could receive the principal of
> the property division, whether the monthly payment was
> intended to be credited towards the principal, the interest or
> a combination thereof, and a reservation of jurisdiction over
> the terms of any promissory note issued.

(*Id.* ¶ 29.)  Greenfield denies that he could have asked Magistrate Koppenhofer to

revisit her orders under a clerical error theory.  (ECF No. 85 at 9, ¶ 29.)  The Court will

address this denial below in Part VI.C.3.

> 2.  <u>Further Proceedings in Weld County and Silverman's Death</u>

Regardless, proceedings continued before Magistrate Koppenhofer on issues not

yet resolved.  On March 20, 2014, Greenfield filed a notice to set a hearing on the

contempt citation.  (ECF No. 72 at 10, ¶ 18.)  On June 24, 2014, Magistrate

Koppenhofer denied DeAngelo's request to require Silverman to pay her attorneys'

fees, finding it would be "fair, equitable, and appropriate to order each party to pay their

own remaining attorney fees."  (ECF No. 72-9 at 2.)  On December 15, 2014, she

dismissed the contempt citation without prejudice

> [i]n light of [Silverman's] failing health . . . and his inability to
> appear in person for a remedial and punitive contempt
> hearing, or even testify at such and based upon the Court's
> many attempts to reset this matter and the need for the
> Court to have [Silverman] present for a hearing on punitive
> contempt . . . .

(ECF No. 72-11 at 1.)  On January 5, 2015, Greenfield petitioned for district judge

review of that order.  (ECF No. 72-12.)[5]  But Silverman died on January 30, 2015.  (ECF

---

[5] Greenfield asserted that contempt is a matter for which consent to the magistrate is not necessary, and therefore district court review remained available under Colorado Rule for

No. 72 at 10, ¶ 21.)  By that time, he had made eleven maintenance payments of $10,000 each.  (ECF No. 81 at 15, ¶ 31.)  His death terminated DeAngelo's rights to those payments.  (*Id.*)[6]

On March 24, 2015, DeAngelo replaced Greenfield with a new attorney, Jessica Catlin.  (ECF No. 72 at 10, ¶ 22.)  Three days later, a Weld County district judge ruled on the January 5 petition for review of Magistrate Koppenhofer's order dismissing the contempt citation.  (ECF No. 72-16.)  The district judge held that the magistrate erred in

> dismiss[ing] the contempt citation on the court's own motion. However, given the Husband's subsequent death, the issue of contempt is now moot, except for the request by the Wife concerning her attorney's fees associated with seeking compliance by the Husband with the trial court's prior orders. The Wife's request for attorney fee's [*sic*] shall be addressed by the trial court upon remand, once the party representing the Husband's estate is joined as a necessary party to this action.

(*Id.* at 2.)  Greenfield and DeAngelo both characterize this ruling from the district judge as a "dismissal" of the contempt citation, although DeAngelo adds that it was "without prejudice."  (ECF No. 72 at 10, ¶ 24; ECF No. 81 at 6, ¶ 24.)  Catlin, DeAngelo's new attorney, did not appeal from this order.  (*Id.*)

   3.   <u>Moving for Relief from Judgment, Moving for Transfer to Boulder County, and DeAngelo's Remarriage</u>

On April 2, 2015, Catlin moved for relief from Magistrate Koppenhofer's permanent orders under Colorado Rule of Civil Procedure 60(b)(5) ("the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment").  (ECF No.

---

Magistrates 7(a).  (*Id.* ¶ 5.)

   [6] *See* Colo. Rev. Stat. § 14-10-122(2)(a)(I).

72-17.)  She pointed out that the payment terms of the marital property equalization payment were nonsensical, and asked for a modification that effected full payment within three to five years.  (*Id.* ¶¶ 5, 14.)

However, also on April 2, 2015, Catlin and counsel for Silverman's estate jointly moved to change venue to Boulder County District Court because Silverman's probate case was pending in that court, his personal representative lived in Boulder, all counsel lived in Boulder, and DeAngelo no longer lived in Weld County.  (ECF No. 72-18.) Magistrate Koppenhofer denied that motion, considering herself in the best position to rule on still-pending matters.  (ECF No. 72-19.)

DeAngelo remarried on April 6, 2015.  (ECF No. 72 at 11, ¶ 28.)

On May 7, 2015, Catlin and counsel for Silverman's estate jointly moved for district judge review of Magistrate Koppenhofer's ruling on the motion to transfer.  (ECF No. 72-20.)  On May 22, 2015, the district judge overturned that ruling and transferred the proceeding to Boulder County District Court.  (ECF No. 72-21.)

### 4.    Proceedings in Boulder County

On August 4, 2015, the Boulder County District Court denied DeAngelo's motion for Rule 60(b)(5) relief.  (ECF No. 72-22.)  The court reasoned that the "mathematical anomaly" regarding the marital property equalization payment was better characterized as "mistake, inadvertence, surprise, or excusable neglect" under Colorado Rule of Civil Procedure 60(b)(1), and the time for bringing a Rule 60(b)(1) motion had expired.  (*Id.* at 6–7.)

The next day, Catlin, on DeAngelo's behalf, moved for Rule 60(a) relief.  (ECF No. 72-23.)  As previously noted, Rule 60(a) allows the court to correct "[c]lerical

mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission . . . at any time." Catlin noted the Boulder court's "mathematical anomaly" reasoning but argued that "mistake, inadvertence, surprise, or excusable neglect"—*i.e.*, error apparently attributable to one of the parties—was not the proper lens to view the problem. (ECF No. 72-23 ¶ 5.) Rather, "to the best of counsel's knowledge, the 'mathematical anomaly' was the product of the Magistrate's own doing." (*Id.*) Catlin continued, "The failure of the magistrate to mathematically effectuate her division of property should not be borne by [DeAngelo], and the error must be corrected under C.R.C.P. 60(a)." (*Id.* ¶ 9.)

On August 12, 2015, Silverman's estate responded to the new motion. (ECF No. 81-4.) The estate argued that Rule 60(a) cannot be used to obtain relief already denied under Rule 60(b)(5); and, in any event, the motion did not establish an instance of clerical error because Magistrate Koppenhofer's intent was unclear and so it was not possible to conclude that the words of her order deviated from her intent. (*Id.*)

On August 13, 2015, the court denied the Rule 60(a) motion in a short order stating that the court adopted Silverman's estate's response arguments. (ECF No. 72-24.)

**D.  Proceedings in the Colorado Court of Appeals**

    1.  DeAngelo's Appellate Arguments

On September 17, 2015, DeAngelo appealed the denial of the two Rule 60 motions to the Colorado Court of Appeals. (ECF No. 72-25.) Referring to the order denying Rule 60(b)(5) relief, she argued to the appellate court that "[t]he Trial Court's effort to shoe horn the Magistrate's clerical error into a 'mistake' [under Rule 60(b)(1))]

which was required to be raised within [an already-expired] time frame . . . was an abuse of discretion."  (ECF No. 72-26 at 30.)  This was so she said, because Rule 60(b)(1) addresses mistakes committed by the parties, not the judge, and a mistake committed by a party was not at issue: "The failure of the Magistrate to effectuate a payment schedule (or, indeed understand algebraic concepts) was not a 'mistake,' 'inadvertence' or 'neglect' on the part of [DeAngelo], nor that of her former counsel." (*Id.*)  DeAngelo alternatively argued that, even assuming she "was somehow remiss in not catching the Magistrate's mathematical error, C.R.C.P. 60(a)'s purpose is to allow the Court to *correct* its own errors *and* those of a party."  (*Id.* at 24 (emphasis in original).)

      2.   <u>The Appellate Decision</u>

On November 3, 2016, the Colorado Court of Appeals resolved the appeal in an unpublished disposition.  (ECF No. 72-27.)[7]  The court was convinced that the record evinced Magistrate Koppenhofer's "inten[t] to divide the marital property equally as both husband and wife had requested."  (*Id.* ¶ 16.)  The question of her former attorney's (Greenfield's) potential error did not matter because DeAngelo "did not argue for relief based on her counsel's inaction, but rather because the judgment does not reflect the court's intent in dividing the marital property."  (*Id.* ¶ 17.)  Noting its prior interpretation that Rule 60(a) "applies to clerical mistakes made not only by a clerk, but also to mistakes made by the court and the parties," *Reisbeck, LLC v. Levis*, 342 P.3d 603, 605 (Colo. App. 2014), the Court of Appeals concluded that Rule 60(a) relief was

_____

[7] Westlaw and Lexis both contain entries noting the outcome of the appeal, but neither reproduces the accompanying reasoning.  *See* 2016 WL 6518758; 2016 Colo. App. LEXIS 1557.

appropriate because Magistrate Koppenhofer intended an equal distribution of marital property but, for unexplained reasons, created payment terms that could never lead to equal distribution.  (*Id.* ¶¶ 12, 16–17.)  The court also concluded that Rule 60(b)(5) was an available source of relief.  (*Id.* ¶¶ 18–22.)  "Thus," the court said, "we remand the case for the district court to reconsider payment terms for the $1,183,114 property equalization payment."  (*Id.* ¶ 23.)

The court also addressed issues related to the contempt proceeding.  The court held that reopening those proceedings on remand was not required because the record did not support the notion that Magistrate Koppenhofer "intended to divide [the $82,000] yet failed to do so."  (*Id.* ¶ 25.)  Moreover, Greenfield had not argued that Silverman dissipated the marital estate in anticipation of dissolution, but only that he had violated the automatic preliminary injunction.  (*Id.* ¶ 26.)

Finally, the appellate court directed the district court on remand "to determine [DeAngelo's] request" for attorneys' fees incurred on appeal.  (*Id.* ¶ 31.)

## E.    Resolution on Remand

Without asking the Boulder County District Court to decide the matter of attorneys' fees, DeAngelo and Silverman's estate settled all outstanding matters on July 14, 2017.  (ECF No. 72 at 13, ¶ 38.)  In relevant part, that settlement created a rational payment schedule for the full value of the equalization payment, plus interest, embodied in a promissory note executed by the estate in DeAngelo's favor.  (ECF No. 72-29.)  In addition, DeAngelo agreed to accept $70,000 to settle her claim of $155,731 in attorneys' fees.  (ECF No. 72-28 at 6, ¶ 15; ECF No. 81 at 19, ¶ 40.)

## II. RULE 702 STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advanc[e] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alterations in original).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed.

R. Evid. 704.

The trial court's focus under Rule 702 is on the methodology employed by an expert, not on his or her conclusions. *Bitler*, 400 F.3d at 1233. Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

## III.  RULE 702 ANALYSIS

### A.  Saltzman's Background, Report, and Deposition

Scott Saltzman is a certified public accountant and a certified valuation analyst with experience in the field of valuing marital assets, including prior experience as a retained expert in divorce proceedings. (ECF No. 71-2 at 22–26.) DeAngelo's current attorneys retained Mr. Saltzman to provide an expert opinion regarding DeAngelo's potential damages but for Greenfield's alleged malpractice. (*Id.* at 3.) For present purposes, his most important opinion is that Greenfield should have argued for a larger share of the marital property because Silverman's failing health made it unlikely that maintenance payments would suffice:

> [Greenfield] failed to recognize and appreciate in a timely manner that the Husband would not be able to meet his maintenance obligation throughout the period required due to his likely terminal illness. . . .  It is typical in a marital dissolution proceeding that when one party is unable to meet their future obligation as a result of matters such as a terminal illness, that the parties or Court provide for disproportionate allocation of assets.  By providing additional

16

assets to the party that was intended to receive
maintenance, the assets can be safely invested to take the
place of such maintenance.

(*Id.* at 5–6.)  Mr. Saltzman further opines that, but for the alleged malpractice, DeAngelo

could have received an additional distribution of marital property equal to $448,167—

which, assuming a discount rate of 3.31% and adjusting for taxes, was the present

value of $650,000 (*i.e.*, the total amount Silverman would have paid in $10,000 monthly

maintenance payments if he had lived for the full 65-month maintenance term) at the

time of Magistrate Koppenhofer's permanent orders.  (*Id.* at 9.)

At Mr. Saltzman's deposition, his opinion about Greenfield's failure to ask for

additional marital property in lieu of maintenance prompted the following exchange:

Q.      What is the basis for your conclusion that the Court
would have done that [*i.e.*, award more marital property to
DeAngelo]?

A.      Because I've seen it before.  I've been involved in it
before.  And I've—that was my conversation with Kathy, and
Ms.—Ms. Hogan. She's done it before, too.

So when you're in situations where you have a terminally ill
individual and there are other assets, the Court can also take
into account that—in the situation I had, the individual—the
estate was there, but you can also take into account
separate assets.

So you can just—it can be disproportionate assets.
Colorado is not a 50-50 asset state, so you can do
disproportionate assets based on facts and circumstances.

(ECF No. 71-1 and 5–6.)  The reference to "Kathy"/"Ms. Hogan" is to DeAngelo's

standard-of-care expert, who is an experienced divorce attorney.  (*See* ECF No. 72-36.)

**B.    Greenfield's Arguments**

1.    <u>Lack of Qualifications</u>

Greenfield argues that Mr. Saltzman's opinion that a court may have allocated

assets differently in light of an argument to that effect is inadmissible because

Mr. Saltzman is not a lawyer and is therefore unqualified to provide this opinion. (ECF

No. 71 at 4–5.) The Court need not address this argument because the Court *sua*

*sponte* finds that it will not permit Mr. Saltzman to testify about an alleged duty to seek a

more favorable distribution of marital property, or about the possibility that the Weld

County court could have granted that relief, because Mr. Saltzman's opinions in this

regard duplicate those of Ms. Hogan. In relevant part, Ms. Hogan opines as follows:

> [T]he proper way to pursue a case involving the
> circumstances presented here [*i.e.*, Silverman's failing
> health] would be to counsel the client as to the illusory
> nature of the potential maintenance claim and to pursue
> other remedies such as a greater share of the property.
>
> * * *
>
> In the actual circumstances of this case, if the goal was to
> secure actual dollars for the client and not simply a
> theoretical number that will disappear on the payor's death,
> the appropriate approach was to pursue a greater share of
> the assets in addition to, or instead of, any maintenance
> claim.
>
> If Mr. Greenfield had met the established standard of care
> with respect to the issue of maintenance then that should
> have avoided the negative outcome in this case.

(*See* ECF No. 72-36 at 7–8.) The Court accordingly finds that it would be needlessly

cumulative and a waste of time to allow two experts to address the same subject. *See*

Fed. R. Evid. 403. Moreover, two experts testifying on the same topic risks the problem

of one expert bolstering another expert, which this Court usually does not permit.

In his summary judgment briefing, however, Greenfield argues that Ms. Hogan

does *not* provide the same opinion as Mr. Saltzman. (ECF No. 72 at 15; ECF No. 85

at 14.) Greenfield appears to be saying that Ms. Hogan only opines about what

Greenfield should have argued, as compared to Mr. Saltzman, who goes on to opine that the Weld County court might have agreed with the argument. Such an interpretation parses Ms. Hogan's opinion too finely. She explicitly opines that "the negative outcome in [the divorce proceeding]" "should have [been] avoided" had it Greenfield made an argument for disproportionate allocation of assets. (ECF No. 72-36 at 8.) Necessarily implicit in that argument is that the court would have accepted the argument. Accordingly, the Court excludes Mr. Saltzman's opinions about an alleged duty to seek a more favorable distribution of marital property, or about the possibility that the Weld County court could have granted that relief, because they duplicate Ms. Hogan's opinions to the same effect.

2.    Unreliability

Greenfield further claims that Mr. Saltzman's opinions are unreliable for three different reasons. These arguments are potentially mooted by the relief already granted. But to the extent they are addressed to Mr. Saltzman's opinions about actual dollar amounts DeAngelo might have secured in divorce proceedings, the Court addresses them as follows.

a.    *Incorrect Assumption Regarding 50-50 Split*

Greenfield argues that Mr. Saltzman's opinions are unreliable because "[h]e assumes that the underlying court ordered a 50-50 property division." (ECF No. 71 at 6.) This assumption is incorrect, Greenfield says, because Magistrate Koppenhofer allocated all of the tax debt to Silverman and all of the equity in a Nevada home to DeAngelo. (*Id.*)

This is the stuff of cross-examination, not pretrial exclusion. There is nothing to

suggest that a perfect 50-50 division was the *sine qua non* of Mr. Saltzman's opinions. If he misunderstood the division of property, then his calculations about how much extra Greenfield should have sought are subject to attack. But that does not make them unreliable to the point of that Rule 702 prevents Mr. Saltzman's testimony on this point.

        b.    *Undue Speculation*

Greenfield next argues that Mr. Saltzman's assumption "that the underlying court would have made the property settlement even more disproportionate than it already was" is unduly speculative. (ECF No. 71 at 6–7.) The protection against speculative damages "only applies to situations where the fact of damages is uncertain, not where the amount is uncertain." *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 873 (Colo. 2002). Here, if the jury is persuaded (by, *e.g.*, Ms. Hogan's testimony) that the marital property distribution would have been more favorable to DeAngelo but for Greenfield's alleged violation of the standard of care, the fact of damages is established and the only question is amount. As narrowed by this order, Mr. Saltzman's opinions go to the latter question, not the former. The Court therefore will not exclude his opinions as unduly speculative.

        c.    *"Legally Improper or Chronologically Impossible"*

Finally, Greenfield argues that the notion that Magistrate Koppenhofer would have awarded additional marital property to compensate for the possibility that Silverman would not survive long enough to pay maintenance "would have been either legally improper or chronologically impossible." (ECF No. 71 at 7.) Greenfield elaborates on this argument in his summary judgment briefing (see ECF No. 72 at 16–17), and the Court will address all of these arguments together.

The crux of Greenfield's argument is that a court may not award maintenance until after it divides the marital property, because the division of marital property is a mandatory statutory factor the court must consider when evaluating maintenance. *See* Colo. Rev. Stat. § 14-10-114(3)(a)(I)(B) & (II) (requiring the court to make "initial written or oral findings" about, among other things, "[t]he marital property apportioned to each party" before "determin[ing] the amount and term of the maintenance award, if any"); *In re Marriage of Jones*, 627 P.2d 248, 253 (Colo. 1981) ("Only after the property division has been made can the court determine, by application of the statutory standards, whether maintenance is necessary to provide for the reasonable needs of one of the parties."). Greenfield further argues that maintenance may not be awarded based on future contingencies. *See In re Marriage of Simon*, 856 P.2d 47, 51 (Colo. App. 1993) ("Awards of maintenance must be based upon the parties' needs and circumstances at the time of the hearing, rather than upon their past or future conditions.").

Greenfield's arguments appear to contain two assumptions. The first is that DeAngelo believes Greenfield should have asked for more *maintenance* in light of Silverman's expected demise. But this is not (and as far as the Court can tell) never has been DeAngelo's argument. (*Cf.* ECF No. 15 ¶ 53(i)–(j).) The second is that awarding a larger division of *marital property* with an eye toward the ineffectiveness of maintenance somehow improperly "circumvent[s] the statutory limitations on maintenance" (ECF No. 85 at 15), referring to Colorado Revised Statutes § 14-10-122(2)(a)(I) & (III), which provides that maintenance terminates upon the death of either party or the remarriage of the party receiving maintenance.

This may be a good argument for portraying DeAngelo to the jury as motivated

by greed, but the Court cannot find that the statutes necessarily foreclose the relief DeAngelo seeks. Whatever implications one may draw out of these provisions, Greenfield cites nothing to support the idea that awarding marital property with an eye toward the ineffectiveness of maintenance is actually unlawful—something that the Colorado Legislature prohibits.[8]

* * *

For these reasons, the Rule 702 Motion is granted in part and denied in part.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

---

[8] Nor, interestingly, does Greenfield provide any reason to believe that he would never have argued for a such a disproportionate award because he believed it to be unlawful.

## V. PRELIMINARY EVIDENTIARY RULING

DeAngelo supports many of her assertions and denials by citing to Ms. Hogan's expert report. That report is in the form of a letter to DeAngelo's current counsel, not in the form of an affidavit or declaration. (*See* ECF No. 72-36.) Greenfield objects that an unsworn expert report is inadmissible to support or oppose summary judgment, citing *McDaniels v. Laub*, 186 P.3d 86, 87 (Colo. App. 2008), which held as much as to Colorado Rule of Civil Procedure 56 after reviewing federal cases (not from the Tenth Circuit) interpreting Federal Rule of Civil Procedure 56 in that manner. (*See* ECF No. 85 at 5.)

A Colorado court's interpretation of a Colorado court rule is, at most, potentially persuasive authority on how to interpret a federal court rule. Federal Rule of Civil Procedure 56 underwent significant amendments in 2010. As the Court has described elsewhere, it is not clear if declarations or affidavits are needed *at all* under the revised rule, given its emphasis on whether an assertion may be supported by evidence admissible at trial, not on the form of the assertion in the summary judgment record. *See Lyall v. City of Denver*, 2018 WL 1470197, at *4–6 (D. Colo. Mar. 26, 2018).

In any event, the Court has repeatedly faced and "routinely rejected this argument in the context of unsworn expert reports submitted as evidence of what an expert would say at trial." *Id.* at *5; *see also Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1214–15 (D. Colo. 2017); *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1182 n.11 (D. Colo. 2017); *Pertile v. Gen. Motors, LLC*, 2017 WL 4237870, at *2 & n.3 (D. Colo. Sept. 22, 2017); *Miller v. BNSF Ry. Co.*, 2017 WL 1880603, at *2 (D. Colo. May 9, 2017); *Gunn v. Carter*, 2016 WL 7899902, at *2 (D. Colo. June 13, 2016). The Court's

view is partly informed by the fact that "the procedure surrounding expert reports provides safeguards and indicia of reliability similar to those provided by sworn affidavits or declarations," *id.*; and partly by the "utterly formalistic" nature of the objection, *Sanchez*, 299 F. Supp. 3d at 1182 n.11, which has no bearing on whether "a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). Accordingly, as before, the Court overrules Greenfield's objection to Ms. Hogan's report.

## VI.  ANALYSIS

### A.    Legal Malpractice Framework

"To succeed on a legal malpractice claim founded in negligence, the plaintiff must establish that (1) the attorney owed a duty of care to the plaintiff, (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the plaintiff." *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo. 1999).

Many of Greenfield's summary judgment challenges focus on the third element. As to that, "[e]stablishing causation in a legal malpractice action requires the plaintiff to prove what has been characterized as a 'case within a case.'  The plaintiff must demonstrate that the claim underlying the malpractice action should have been successful if the attorney had acted in accordance with his or her duties."  *Id.*  "Should have been successful" means "the objective of a trial-within-a-trial is to determine what the result should have been (an objective standard) not what the result would have been by a particular judge or jury (a subjective standard)."  4 Ronald E. Mallen, *Legal Malpractice* § 37:87, text accompanying n.15 (2019 ed.).  Although sometimes phrased as a "would have" standard, this is only correct "if the inquiry is what a *reasonable* judge or jury 'would have' decided."  *Id.* (emphasis in original).

But case-within-a-case does not apply to all legal malpractice theories: "when the injury claimed does not depend on the merits of the underlying action or matter, the plaintiff does not need to prove a case within a case." *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 412 P.3d 751, 761 (Colo. App. 2015). The Court finds that this applies to one specific malpractice theory asserted by DeAngelo, discussed below.

## B.      Increased Equalization Payment in Lieu of Statutory Maintenance

In terms of dollar value, DeAngelo's most significant claim is the one already mentioned in the Rule 702 analysis, namely, because maintenance does not survive death and Silverman was expected to die soon, Greenfield allegedly acted below the standard of care when he failed to pursue a division of marital property disproportionate enough to compensate for the premature end to maintenance payments.

Greenfield makes six arguments against this theory, which the Court will address in turn.

### 1.      Lack of Evidence: Mr. Saltzman

Greenfield first argues that DeAngelo cannot rely on Mr. Saltzman's expected expert testimony for the notion that the Weld County court should have awarded the sort of disproportionate division of marital property needed to maintain her.  (ECF No. 72 at 15.)  The Court has already excluded Mr. Saltzman's testimony on this point (Part III.B.1, above), but such exclusion does not lead to judgment as a matter of law.

### 2.      Lack of Evidence: Ms. Hogan

Greenfield next argues that Ms. Hogan never offered an opinion about how much more DeAngelo would have received if Greenfield had argued for a larger portion of marital property, and so Greenfield's claim fails for lack of evidence.  (*Id.*)  This

argument turns on the assumption that Mr. Saltzman's opinions are entirely excludable. They are not. Mr. Saltzman will still be permitted to offer his damages calculations under the assumption that DeAngelo's other witnesses will persuade the jury that Greenfield violated the standard of care by not arguing for a larger portion of marital property and that a reasonable jurist would have accepted the argument.

### 3. Statutory Restrictions on Maintenance

Greenfield's third argument is that Colorado law does not permit statutory maintenance payments that survive death. (*Id.* at 16.) That is correct, but DeAngelo has never argued that Greenfield should have argued for maintenance payments that survive death.

### 4. Frustration of Statutory Policy

Greenfield's fourth argument reprises the argument rejected in Part III.B.2.c, above, namely, that the Colorado statutory restriction against post-death and post-remarriage maintenance payments would be frustrated if effectively the same result could be achieved from a disproportionate distribution of marital property. (*Id.* at 16–17.) For the same reasons previously discussed, the Court finds that Greenfield has failed to adequately support this argument.

### 5. Statutory Factors for Division of Marital Property

Greenfield's fifth argument is that a judge presiding over a divorce proceeding is required to weigh certain factors when dividing the marital estate, and those factors do not include "the relative health of the parties." (*Id.* at 17.) The statute in question reads in relevant part as follows:

> In a proceeding for dissolution of marriage . . . the court . . . shall set apart to each spouse his or her property and shall divide the marital property, without regard to marital

misconduct, in such proportions as the court deems just after considering all relevant factors including:

(a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(b) The value of the property set apart to each spouse;

(c) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse with whom any children reside the majority of the time; and

(d) Any increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of the separate property for marital purposes.

Colo. Rev. Stat. § 14-10-113(1). The listed considerations are plainly nonexclusive—illustrative of "relevant factors" but not exhaustive. It is therefore irrelevant that "the relative health of the parties" is not set forth specifically.

> 6. Already-Existing Disproportionality

Finally, Greenfield argues that Magistrate Koppenhofer *did* allocate property disproportionally in light of the tax debt and Nevada home equity. (ECF No. 72 at 17.) It is unclear how this could cause DeAngelo's claim to fail as a matter of law. The point of DeAngelo's argument is that Greenfield should have sought enough additional marital property to compensate for Silverman's expected demise, so the assertion that Magistrate Koppenhofer already allocated property disproportionally does not mean she allocated it disproportionally *enough*.

* * *

For all these reasons, the Court rejects Greenfield's argument that DeAngelo's first malpractice theory fails as a matter of law.

**C. Amounts Spent Correcting Magistrate Koppenhofer's Error Regarding the Property Equalization Payment Terms**

By dollar value, DeAngelo's second most significant claim is Greenfield's alleged negligence toward the property equalization payment terms, *i.e.*, $3,000 per month with 8% interest, meaning, under the circumstances, that the monthly payment did not cover the accruing interest, much less principal. Specifically, DeAngelo claims that the standard of care required Greenfield: (1) to propose payment terms, and, had he done so, it would have prevented Magistrate Koppenhofer from formulating her own terms that turned out to be nonsensical; or, at least after the error occurred, (2) to file a motion under Colorado Rule of Civil Procedure 60(a), asking Magistrate Koppenhofer to revisit the payment terms under the theory that they were clerical errors. (ECF No. 72-36 at 5, 6; ECF No. 81 at 29–30.) Although the post-remand settlement corrected the problem created by Magistrate Koppenhofer's payment terms, DeAngelo still seeks, as damages, the attorneys' fees she paid to Catlin to remedy Greenfield's alleged errors.

1. Judicial Estoppel

Greenfield first argues that DeAngelo is judicially estopped from asserting her first theory of negligence—failure to propose payment terms—because she represented to the Colorado Court of Appeals that "[t]he failure of the Magistrate to effectuate a payment schedule (or, indeed understand algebraic concepts) was not a 'mistake,' 'inadvertence' or 'neglect' on the part of [DeAngelo], *nor that of her former counsel*." (ECF No. 72-26 at 30 (emphasis added).)[9]

_____

[9] Greenfield asserts his judicial estoppel argument as if it applies to all theories of negligence related to Magistrate Koppenhofer's payment terms. (ECF No. 72 at 18.) But in light of the statement made to the Court of Appeals, the argument can apply, if at all, only to actions leading up to the permanent orders.

In federal court, judicial estoppel is governed by federal law even if the underlying cause of action is governed by state law. *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007). Whether to apply judicial estoppel turns on a three-factor analysis:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Id.* (internal quotation marks and citations omitted; alterations incorporated; emphasis in original).

The Court need only address the second factor. Nothing in the Colorado Court of Appeals's reasoning turned on accepting DeAngelo's claim that Greenfield had not erred. The only language showing any consideration of Greenfield's potential negligence is as follows:

> The estate's argument that wife may not seek relief under C.R.C.P. 60(a) based on the failure of her first attorney to timely appeal the permanent orders is unpersuasive. Wife did not argue for relief based on her counsel's inaction, but rather because the judgment does not reflect the court's intent in dividing the marital property. Hence, the present case is distinguishable from *Cavanaugh v. State*, 644 P.2d 1, 4–5 (Colo. 1982), on which the estate relies and in which the proponent for C.R.C.P. 60(a) relief argued only that her former counsel had failed to appeal from her contempt judgment, and not that the underlying judgment was not what the court intended.

(ECF No. 72-27 ¶ 17.) This language is significant in two respects. First, the only negligence theory discussed here—and therefore the only theory that might be judicially

estopped—is Greenfield's inaction after the permanent orders issued, which has nothing to do with DeAngelo's representation that the content of the permanent orders cannot be attributed to Greenfield's failure to propose payment terms. Second, the Court of Appeals apparently concluded that Rule 60(a) is an appropriate form of relief regardless of counsel's negligence if the words of the lower court's order do not reflect the lower court's intent.

Accordingly, the Colorado Court of Appeals did not rely on or adopt DeAngelo's assertion that "[t]he failure of the Magistrate to effectuate a payment schedule (or, indeed understand algebraic concepts) was not a 'mistake,' 'inadvertence' or 'neglect' on the part of [DeAngelo], nor that of her former counsel." (ECF No. 72-26 at 30.) Although DeAngelo and her witnesses may surely be cross-examined based on this statement, DeAngelo is not judicially estopped from claiming in this lawsuit that Greenfield negligently failed to propose payment terms.

2.    Intervening Cause

Greenfield contends that, regardless of whether he was negligent with respect to the payment terms, the Boulder County District Court's later erroneous denial of Catlin's Rule 60(a) Motion broke the chain of causation between his actions and DeAngelo's damages (additional attorneys' fees). The Court partly agrees.

a.    *DeAngelo's First Theory*

The success of Greenfield's intervening cause argument turns on whether a jury accepts DeAngelo's first malpractice theory. As stated, DeAngelo's first theory is that Magistrate Koppenhofer's nonsensical payment terms are attributable to Greenfield's negligence, specifically, he had a duty to propose payment terms before Magistrate

Koppenhofer entered the permanent orders, but he failed to do so. This is based on the theory that a lawyer generally does not bear the risk of judicial error, but may be liable if the lawyer contributed meaningfully to the error or at least should have foreseen and could have taken steps to prevent it. *See* 1 *Legal Malpractice* § 8:24 (discussing authorities).[10] If a jury accepted this theory, then it would be Greenfield's fault that DeAngelo needed to move for Rule 60(a) relief. The attorneys' fees DeAngelo incurred when Catlin eventually brought that specific motion are therefore fees DeAngelo need not have incurred but for Greenfield's error, and so are recoverable as malpractice damages. Moreover, they are recoverable regardless of whether the motion should have succeeded because the point is that the motion needed to be *filed*, and associated attorneys' fees incurred, to correct Greenfield's error. *See Boulders at Escalante*, 412 P.3d at 761.

However, if a jury does *not* accept DeAngelo's first malpractice theory—in effect, concluding that Magistrate Koppenhofer is entirely to blame for the payment terms— then Greenfield's intervening cause argument has merit. In that situation, the fees DeAngelo incurred to bring the Rule 60(a) motion cannot be attributed to Greenfield's error. These are fees she would have needed to incur anyway, whether paid to Greenfield, Catlin, or someone else.

---

[10] It would seem to be a very rare day when a lawyer could be held liable for failing to prevent a judge's *sua sponte* nonsense, but Greenfield does not presently argue as much. Moreover, DeAngelo's alleged duty of care can reasonably be cast as a duty to advocate for favorable payment terms because, without such an argument, it may be reasonably foreseeable that a judge left to his or her own devices will impose unfavorable terms. "Unfavorable terms" is a category that *includes* nonsensical terms, but also includes rational terms that nonetheless prejudice the payee's interests, such as an unduly long payment schedule.

### b. Appellate Fees

Moreover, whether or not a jury accepts DeAngelo's first malpractice theory, DeAngelo cannot recover *appellate* attorneys' fees. We know now that the Boulder County District Court erred in denying Rule 60(a) relief. Again, the risk that a court will rule erroneously is generally not a risk that a lawyer bears unless the lawyer meaningfully contributed to the error or should have foreseen and could have prevented it. *See* 1 *Legal Malpractice* § 8:24. Greenfield could not have contributed to, foreseen, or prevented the court's erroneous ruling because, at a minimum, he no longer represented DeAngelo when the Rule 60(a) motion was filed.

### c. DeAngelo's Second Theory

DeAngelo argues, however, that Rule 60 motion practice in Boulder and the ensuing appeal could have been avoided if Greenfield had moved for relief from Magistrate Koppenhofer, shortly after recognizing the oddity inherent in her payment terms. (ECF No. 81 at 29–30; ECF No. 72-36 at 6.) This is DeAngelo's second theory of malpractice stemming from the payment terms. But DeAngelo cannot have it both ways. It is DeAngelo who insists, correctly, that case-within-a-case is an objective, "what should have happened" standard, meaning the question is what a reasonable jurist would have done. (ECF No. 81 at 29 (citing 4 *Legal Malpractice* § 37:87); *see also* Part VI.A, above.) She insists as much to rebut Greenfield's argument that causation is too speculative because no one knows what *Magistrate Koppenhofer* would have done had Greenfield filed a Rule 60(a) motion in front of her. (*See* ECF No. 72 at 19–22.) But DeAngelo—having established that "What would Magistrate Koppenhofer have done?" is the wrong question—cannot then insist the outcome would have been better

for her had Greenfield filed his Rule 60(a) motion in front of Magistrate Koppenhofer. Given the Colorado Court of Appeals's decision, we know what *should have happened* had Greenfield met what DeAngelo asserts to be the standard of care, or in other words, had Greenfield filed the Rule 60(a) motion: a reasonable jurist should have granted the Rule 60(a) motion. But we also know what *actually happened* when that motion eventually got filed (by Catlin): the lower court erroneously denied it, through no fault of Greenfield's.

DeAngelo may be trying to argue that that a motion filed before a magistrate— *any* magistrate—would have fared better than the later motion actually filed. "[I]t is reasonable to expect," she argues, "that *a magistrate*, upon timely notice of the errors in the Permanent Orders . . . would have corrected [the payment terms]." (ECF No. 81 at 29 (emphasis added).) DeAngelo cites no authority, and the Court is aware of none, holding that the "reasonable judge" standard may be tailored to the *type* of judicial officer making the decision.[11] Moreover, if DeAngelo's mention of "timely notice" is meant as an argument that a reasonable jurist would have granted a Rule 60(a) motion if it had been filed soon after the permanent orders entered, she cites nothing to support such a claim and the Court rejects it in any event. Colorado Rule of Civil Procedure 60(a) allows for a motion under its authority "at any time." There is, therefore, no objective basis for concluding that such motions brought sooner rather than later will be more successful. Accordingly, DeAngelo's artful phrasing does not avoid the fact that her argument turns on what Magistrate Koppenhofer would have done as compared to

---

[11] If such an authority exists, it would be difficult to imagine proof that a reasonable Colorado magistrate is less likely to err than a reasonable Colorado district judge.

what the later judge did, not what a reasonable judge should have done.[12]

Under the case-within-a-case framework, DeAngelo's second malpractice theory thus fails because there is no scenario in which Greenfield can be deemed to have caused DeAngelo to spend money she otherwise would not have spent. This is not a question of whether Greenfield acted below the standard of care in failing to file a Rule 60(a) motion, but purely a question of causation. DeAngelo says Greenfield should have sought Rule 60(a) relief, but when Catlin actually filed for such relief, it was erroneously denied. The erroneous Rule 60(a) decision from the trial court was an intervening cause that cut off any liability for which Greenfield might otherwise have been responsible.

3. Scope of Rule 60(a)

Greenfield has a further argument, however, against DeAngelo's *first* malpractice theory (failure to propose payment terms). He claims that, at the time he represented DeAngelo, Rule 60(a) was (i) the only possible avenue of relief but (ii) unavailable under the state of the case law at that time. (ECF No. 72 at 20–21.) The first premise flows from Colorado Rule for Magistrates 5(a), which forbids magistrates from considering "petition[s] for rehearing" other than petitions for "correction of clerical errors pursuant to [Colorado Rule of Civil Procedure] 60(a)." The Court will accept for argument's sake that Greenfield properly interprets this rule because Greenfield fails to establish his second premise as a matter of law.

_____

[12] In this light, another lingering malpractice theory in DeAngelo's briefs also fails. DeAngelo claims that allowing a magistrate to hear the divorce proceedings instead of a district judge was a breach of the standard of care. (ECF No. 81 at 11, ¶ 14.) This necessarily turns on the idea that one judicial decisionmaker would have been better than another. Such an argument is impermissible under the objective approach.

Greenfield's second premise relies on *Diamond Back Services, Inc. v. Willowbrook Water & Sanitation District*, 961 P.2d 1134 (Colo. App. 1997), which held that Rule 60(a) "can apply to errors or omissions by the trial court itself," but only "to cases in which the trial court originally intended to make the award granted by corrective amendment [to the judgment]." *Id.* at 1136.[13]  According to Greenfield, Ms. Hogan and Catlin testified in their depositions in this case that creation of a payment plan is an exercise of judicial discretion; therefore, Greenfield reasons, "the mathematical anomaly in the Permanent Orders was not simply a typographical error, but an exercise of judgment, however misguided it might have been." (ECF No. 72 at 20.)  Greenfield believes this is further supported in some unspecified way by Magistrate Koppenhofer's later ruling denying attorneys' fees (described in Part I.C.2, above). (*Id.*)

Greenfield has not established as a matter of law that Rule 60(a) relief was unavailable under the then-current state of the case law.  This argument rests on Greenfield's belief that the Colorado Court of Appeals in DeAngelo's case departed from *Diamond Back Services*. (ECF No. 72 at 21; ECF No. 85 at 18–19 & n.7.)  It did not.  Again, *Diamond Back Services* held that Rule 60(a) "can apply to errors or omissions by the trial court itself," but only "to cases in which the trial court originally intended to make the award granted by corrective amendment [to the judgment]." *Id.* at 1136.  Greenfield seems to be saying that the Colorado Court of Appeals, in deciding

---

[13] The past-tense phrasing ("the award *granted* by corrective amendment") reflects the fact that appellate decisions about Rule 60(a) usually arise from the trial court's decision to grant Rule 60(a) relief.  The Court has yet to locate a case in which a party attempted to justify its failure to obtain Rule 60(a) relief under the theory that a Rule 60(a) motion could not have succeeded, as Greenfield argues here.

DeAngelo's case, held that Rule 60(a) can also be used to challenge portions of the judgment that *accurately reflect* the trial court's intent.  (*See* ECF No. 72 at 20–21.)  To the contrary, the Court of Appeals found that Magistrate Koppenhofer intended to divide the marital estate equally and that the nonsensical payment terms "obviously [were] not [her] intent in purporting to divide the marital estate equally.  Hence, the parameters of the payment plan can be corrected under C.R.C.P. 60(a)."  (ECF No. 72-27 ¶ 16.)  Thus, the Court of Appeals applied the principle from *Diamond Back Services* on which Greenfield relies, not departed from it.

By citing deposition testimony from Catlin and Ms. Hogan about the discretionary nature of payment plans, Greenfield seems to be implying that all parties agree that the Court of Appeals got it wrong—that it failed to realize the true nature of Magistrate Koppenhofer's decision.  The argument rests on a faulty foundation.  The notion that payment plans are discretionary has nothing necessarily to do whether the words of Magistrate Koppenhofer's permanent orders reflect her intent.  The Colorado Court of Appeals found that those words did not reflect her intent.

Accordingly, it is not true as a matter of law that a choice by Magistrate Koppenhofer to grant Rule 60(a) relief would have been contrary to Rule 60(a) under then-existing case law.  DeAngelo's theory that she needed to file a Rule 60(a) motion to correct an error attributable to Greenfield's failure to propose payment terms does not fail as a matter of law.[14]

\* \* \*

---

[14] Greenfield further asserts that, "[i]f C.R.C.P. 60(a) did not apply, then [DeAngelo's] only recourse for correcting the magistrate's error was a direct appeal," but Greenfield had no duty to appeal because it was outside the scope of his representation.  (ECF No. 72 at 22–23.)  Because Rule 60(a) applies, the Court need not address this argument further.

In sum, Greenfield is entitled to summary judgment on DeAngelo's theory that he committed malpractice by not filing a Rule 60(a) motion before Magistrate Koppenhofer. Greenfield is also entitled to summary judgment, regardless of her malpractice theory, on DeAngelo's claim for attorneys' fees incurred in appealing the Boulder County District Court's orders.[15] But Greenfield is not entitled to summary judgment on DeAngelo's theory that he committed malpractice by failing to propose payment terms. Whether he acted below the standard of care in that instance—thereby becoming responsible for Magistrate Koppenhofer's error and necessitating a Rule 60(a) motion to correct the error—is a matter for the jury to decide. If the jury decides in DeAngelo's favor, she may seek the attorneys' fees incurred in bringing the Rule 60(a) motion in the trial court.

## D.     Contempt

DeAngelo's seeks from Greenfield the $41,000 she believes Magistrate Koppenhofer would have awarded as her share of the $82,000 that Silverman withdrew from the jointly owned bank account. DeAngelo attributes negligence to Greenfield because he did not pursue the contempt citation with the alacrity needed to obtain a judicial resolution before Silverman's death. The Court finds that Greenfield is entitled to summary judgment on this theory for three independent reasons.

First, the only evidence DeAngelo submits that Greenfield acted so slowly as to violate the standard of care is Ms. Hogan's criticism of Greenfield for failing to remind Magistrate Koppenhofer that she had scheduled the contempt hearing to coincide with

---

[15] Given this disposition, the Court need not address Greenfield's argument that DeAngelo failed to mitigate her damages by settling her appellate attorneys' fees claim rather than asking the Court to award fees. (*See* ECF No. 72 at 23–24.)

the January 2014 permanent orders hearing.  (ECF No. 72-36 at 11; *see also* Part I.A.3–4, above.)  Assuming for argument's sake that a jury would accept Ms. Hogan's opinion as evidence of a standard of care violation, Greenfield nonetheless moved in late March 2014 to schedule a contempt hearing.  (*See* Part I.C.2, above.)  Then, about nine months passed before Magistrate Koppenhofer issued her December 2014 order dismissing the contempt citation without prejudice in light of many failed attempts to schedule a hearing.  (*Id.*)  DeAngelo presents no evidence to link Greenfield to this nine-month delay.

Second, and closely related, Greenfield moved for review of the December 2014 order from a Weld County district judge, and the district judge agreed with Greenfield that the order was error.  (*Id.*)  But in between Greenfield's motion for review and the district judge's decision, Silverman died, thus mooting the contempt question. Greenfield cannot be responsible for the delay between Magistrate Koppenhofer's order and Silverman's death.  Moreover, but for Silverman's death, the contempt citation would have gone forward sometime after the district judge overturned Magistrate Koppenhofer's dismissal.  Greenfield cannot be held responsible for Silverman's death.

Third, the Colorado Court of Appeals's decision in this case makes clear that the trial court could not have ordered the $82,000 divided between the parties without first "find[ing] that [Silverman] dissipated [the money] improperly in contemplation of dissolution."  (ECF No. 72-27 ¶ 25 (citing *In re Marriage of Jorgenson*, 143 P.3d 1169, 1173–74 (Colo. App. 2006) and *In re Marriage of Lockwood*, 971 P.2d 264, 267 (Colo. App. 1998)).)  The Court of Appeals went on to note that Greenfield's contempt papers "did not argue dissipation."  (*Id.* ¶ 26.)  *That* failure is conceivably below the standard of

care, but Ms. Hogan does not mention it in her report so DeAngelo lacks needed

evidence to pursue the theory.  *See* Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1).  And even if

Ms. Hogan could testify about it at trial, there is a larger evidentiary problem, namely,

DeAngelo has not shown that she is prepared to put on a dissipation case-within-a-

case.  In other words, she has not shown that she has evidence from which a jury could

conclude that a reasonable jurist would have deemed Silverman's actions to be

dissipation, had the contempt hearing taken place before his death.

For all of these reasons, Greenfield is entitled to summary judgment on

DeAngelo's theories of malpractice related to the contempt citation.

**E.     Conceded Theories**

DeAngelo originally asserted several other malpractice theories, described in her

First Amended Complaint as follows:

> a. Defendants failed to identify or inform Plaintiff about the error in the Permanent Orders, or advise Plaintiff that, at $3,000 per month, plus when factoring in interest 8.0% per annum;
>
> b. Defendants failed to advise Plaintiff that it was mathematically impossible for Mr. Silverman and his estate to ever fully pay the $1,183,144 debt; Defendants failed to insist that Mr. Silverman's monthly payments to Plaintiff be structured so that the $1,183,114 principal and accrued interest be amortized and paid off over a reasonable time;
>
> c. Defendants failed to insist that debt for Plaintiff's equitable share of the marital estate be secured by Mr. Silverman's substantial assets, or obtain a charging order against Mr. Silverman's various companies directing such companies to make such maintenance payments if Mr. Silverman died or otherwise failed to make the payments for other reasons;
>
> d. Defendants failed to advise Plaintiff that if Mr. Silverman died, his estate would not be required to immediately pay in full her equitable share of the marital estate;

> e. Defendants failed to timely bring to the Magistrate's attention the error, and obtain a correction to the Permanent Orders, so that Plaintiff's $1,183,114 equitable share of the marital estate, plus interest, would be amortized and fully paid within a reasonable time;
>
> * * *
>
> h. Defendants failed to obtain a charging order against Mr. Silverman's various companies directing that the companies make the payment, or perfect a security interest in Mr. Silverman's assets, to collateralize Plaintiff's $1,183,114 equitable share of the marital estate and any accrued interest;
>
> * * *
>
> j. Defendants failed to advise Plaintiff that if she (or they) did not take steps to obtain a charging order on or perfect a security interest in Mr. Silverman's assets, the $10,000 per month maintenance payments would cease upon Mr. Silverman's death and she would not be able to recover from Mr. Silverman's estate any unpaid portion of the $650,000 . . . .

(ECF No. 15 ¶ 53.)

Greenfield's summary judgment motion argues that these claims "are false, [as shown by DeAngelo's] deposition testimony, or moot, based on the court of appeals decision and the underlying settlement, or both." (ECF No. 72 at 25.) DeAngelo does not respond to this part of Greenfield's motion. (*See generally* ECF No. 81.) Greenfield therefore argues in his reply brief that DeAngelo has conceded the argument. (ECF No. 85 at 12.) The Court agrees. Greenfield is entitled to judgment as a matter of law on these theories.

## VII. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Greenfield's Motion to Strike Unsupported Opinions of Scott Saltzman (ECF No.

71) is GRANTED IN PART and DENIED IN PART as stated above;

2.      Greenfield's Motion for Summary Judgment (ECF No. 72) is GRANTED IN PART
        and DENIED IN PART as stated above; and

3.      As to matters surviving summary judgment, this case REMAINS SET for a Final
        Trial Preparation Conference on **February 12, 2019 at 2:00 PM** in Courtroom
        A702, and a five-day jury trial commencing on **March 4, 2019 at 8:30 AM** in
        Courtroom A801.  Counsel will take notice of the different courtroom in which the
        Final Trial Preparation Conference will be held.

        Dated this 31st day of January, 2019.

                                        BY THE COURT:


                                        _____
                                        William J. Martinez
                                        United States District Judge